So Ordered.

Signed this 19 day of July, 2023.



                                                Wendy A. Kinsella
                                                United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                                                                    Case No. 21-30851
                                                                                          Chapter 13
Joseph G. Sorbello,

                    Debtor.

---

**Memorandum-Decision and Order on Linda G. Sorbello's Objections to Confirmation of Debtor's Amended Chapter 13 Plan**

      Before the Court are objections by Linda B. Sorbello ("Creditor") to confirmation of the amended chapter 13 plan (the "Amended Plan" at Doc. 19) proposed by Joseph G. Sorbello ("Debtor"). Creditor's Objection to Confirmation of Amended Plan ("Plan Objection" at Doc. 26) and Supplemental Objection to Confirmation of Amended Plan (the "Supplemental Objection" at Doc. 36) (collectively, the "Confirmation Objections") assert Debtor did not file this Chapter 13 case and the Amended Plan in good faith as required by 11 U.S.C. §§ 1325(a)(3) and (a)(7)[1] and

---

[1] Unless otherwise stated, all statutory references are to sections of the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 *et seq.*, and will hereinafter be referred to as "section [section number]."

therefore the Amended Plan cannot be confirmed.[2]  As required by Federal Rule of Civil Procedure 52 ("FRCP"), made applicable to this bankruptcy proceeding by Federal Rule of Bankruptcy Procedure 7052 ("FRBP"), the Court renders the following findings of fact and conclusions of law.  For the reasons detailed below, the Court overrules the Confirmation Objections, confirms the Amended Plan and directs the Trustee to submit an Order Confirming Chapter 13 Plan.

## Jurisdiction

The Court has core jurisdiction over the parties and the subject matter of this contested matter in accordance with 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (b)(2)(L) and (b)(2)(O).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

The facts in this case are largely undisputed.[3]  Debtor and Creditor (the "Parties") were married for approximately 13 years until divorced by a Judgment of Divorce dated February 23, 2005 (Creditor Exhibit C; the "Divorce Judgment").[4]  At the time of the divorce, Debtor had a deferred compensation account with VALIC (the "VALIC Account").  The Divorce Judgment provided that "pursuant to the terms of the in-Court Stipulation dated November 24, 2004 and as more specifically set forth therein, separate Qualified Domestic Relations Orders ["QDRO"] (2)

---

[2] The record consists of the Petition (the "Petition" at Doc. 1); chapter 13 Plan (the "Plan" at Doc. 2); Amended chapter 13 Plan (the "Amended Plan" at Doc. 19); Objection to Confirmation of Amended Plan and Request for Additional Relief (the "Plan Objection" at Doc. 26); Creditor's Supplemental Objection to Confirmation of Amended Plan (the "Supplemental Objection" at Doc. 36); Debtor's Proposed Exhibit List and List of Witnesses (the "Debtor's Exhibit and Witness List" at Doc. 40); Creditor's Proposed List of Witnesses (the "Creditor's Witness List" at Doc. 41); Stipulation of Undisputed Facts (the "Stipulation of Facts" at Doc. 44); Proposed Exhibit List of Linda Sorbello ("Creditor's Exhibit List" at Doc. 46); Amended Schedule A/B ("Amended Schedule A/B" at Doc. 47); Creditor's Proposed Findings of Fact, Conclusions of Law ("Creditor's Proposed Findings of Fact and Conclusions of Law" at Doc. 63); Debtor's Proposed Findings of Fact, Conclusions of Law ("Debtor's Proposed Findings of Fact and Conclusions of Law" at Doc. 64), Transcript of December 6, 2022 Hearing ("Trial Tr." at Doc. 59); Transcript of February 8, 2023 Hearing ("Trial Tr.-2" at Doc. 61); and the exhibits admitted at the evidentiary hearing on December 6, 2022 and continued to February 8, 2023 (the "Exhibits").
[3] The Court's findings incorporate the Stipulation of Facts executed by the Parties on September 28, 2022.  (Doc. 44).
[4] *Linda B. Sorbello vs. Joseph G. Sorbello*, Index No. 2003-M-1507 (the "Matrimonial Case"), pending in the Supreme Court of New York State, Onondaga County (the "Matrimonial Court").

2

shall be issued to provide for the division of the [Debtor's] deferred compensation accounts between the parties." (Stipulation of Facts, ¶ 4). The "in-Court Stipulation" referenced in the Divorce Judgment stated "[t]he division of these accounts shall be accomplished through a Domestic Relations Order and Mrs. Sorbello's attorney shall prepare a Domestic Relations Order for her and shall submit it to the attorney for Mr. Sorbello for his approval as to form and content, before the same is submitted to this Court for its review and signature." (Stipulation of Facts, ¶ 5). No QDROs were ever approved by Debtor's matrimonial counsel or signed by the Matrimonial Court addressing Creditor's interest in the VALIC Account. (Stipulation of Facts, ¶ 6).

Without a QDRO in place, Debtor withdrew the entire VALIC Account balance over a period of time and transferred it to a VOYA Pershing IRA retirement account ("VOYA Account"). From July 2017 through September 2018, Debtor took out approximately $484,000.00 from the VOYA Account, deposited that money into his personal M&T Bank checking account (the "M&T Account") and closed the VOYA Account. No funds from or originating from the VALIC Account or any of Debtor's retirement funds were paid to Creditor. (*See* Stipulation of Facts, ¶ 9).[5]

In August 2019, more than 14 years after the Divorce Judgment was entered, Creditor's attorney contacted Debtor's matrimonial attorney concerning the QDROs and distribution of the deferred compensation funds. By that time, Debtor had spent all of the money and there was virtually nothing left in his M&T Account. Creditor ultimately sought relief in the Matrimonial Court to enforce the Divorce Judgment and address the liquidation of Creditor's interest in the retirement accounts. The Matrimonial Court issued an Order to Show Cause dated September 21,

---

[5] Shortly after the Divorce, Debtor obtained separate loans of (i) $30,440.22 and (ii) $20,000.00 from the VALIC Account to pay Creditor's court ordered legal fees and past due child support. (Stipulation of Facts, ¶ 7). Those payments were unrelated to the division of the VALIC Account with Creditor pursuant to the Divorce Judgment.

3

2021 to hold Debtor in Contempt (the "Contempt Proceeding"), which was withdrawn after this case was commenced.

Debtor filed his chapter 13 bankruptcy petition (the "Petition") on November 12, 2021 (the "Petition Date"). Creditor was listed on Schedule E/F with a general unsecured debt in the amount of $125,000.00. Creditor timely filed an unsecured proof of claim in the amount of $328,764.15 for "conversion of claimant's share of retirement funds." (*See* Proof of Claim 9-1). Other claimants include New York State, the Internal Revenue Service, the City of Syracuse, Verizon and J.P. Morgan Chase Bank, N.A., a secured creditor with a car loan.

On the Petition Date, Debtor filed a Plan. After the Chapter 13 trustee objected because of inconsistencies between the filed tax claims and scheduled claims, Debtor filed the Amended Plan on January 31, 2022. Creditor brought a Motion to conduct an examination of Debtor pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004 Motion" at Doc. 24), and filed her initial Objection, seeking to inquire about, *inter alia*, Debtor's assets, liabilities and the retirement funds. She also sought an extension of time to file a supplemental objection to confirmation based on information that may be obtained from Debtor. Debtor agreed to the Rule 2004 Examination and a Consent Order Directing Debtor to Attend a Rule 2004 Examination was entered. (Doc. 32).

Following the examination, Creditor filed her Supplemental Objection stating the investigation raised more questions than answers and reiterating that confirmation of the Amended Plan should be denied pursuant to sections 1325(a)(3) and (a)(7) on good faith grounds. She maintained that Debtor is a highly educated individual with advanced degrees who expended over half a million dollars in retirement assets on various business dealings, home improvements, loans and gifts, with little to no records regarding the disposition of those funds; no successful business ventures; and no cash left.

An evidentiary hearing on the Confirmation Objections was held on December 6, 2022 and concluded on February 6, 2023 (the "Hearing"). Creditor and Debtor both testified and introduced various documents into evidence. At the close of the proceedings, the Parties were directed to file proposed findings of fact and conclusions of law. The matter was taken under advisement after those submission as of April 27, 2023.

## Discussion

I.   Confirmation Requirements of Section 1325(a)

Section 1325(a) sets out nine requirements that must be satisfied to confirm a chapter 13 plan. When an objection is filed, "the burden of proof at confirmation of a chapter 13 plan is a shifting one." *In re Powers,* 554 B.R. 41, 55 (Bankr. N.D.N.Y. 2016) (citing *McKinney v. McKinney (In re McKinney),* 507 B.R. 534, 539 (Bankr. W.D. Pa. 2014)). The party objecting to the plan bears the initial burden of presenting some evidence to support its position and, if satisfied, the burden shifts to Debtors to prove by a preponderance of the evidence that the requirements of section 1325 have been met. *Id.*; *In re McGuire*, Case No. 20-61183, 2022 Bankr LEXIS 1778, at *5-6 (Bankr. N.D.N.Y. June 24, 2022).

Creditor asserts confirmation must be denied because Debtor did not propose the Amended Plan in good faith and did not file the Petition in good faith as mandated by 11 U.S.C. §§ 1325(a)(3) and (a)(7). At the outset, the Court finds Creditor has met her initial burden and presented evidence sufficient to support both of those Objections. The burden therefore shifts to Debtor to prove by a preponderance of evidence that the requirements of sections 1325(a)(3) and (a)(7) have been satisfied.

5

II. <u>Good Faith</u>

While not defined in the Bankruptcy Code, Black's Law Dictionary defines good faith as: "[a] state of mind consisting in (1) honesty in belief or purpose . . . or (4) absence of intent to defraud or to seek unconscionable advantage." Black's Law Dictionary 836 (11th ed. 2019). A good faith analysis is a fact-specific determination based on the totality of the circumstances. In essence, a court must assess whether the filing was fundamentally fair and complies with the Bankruptcy Code's rehabilitative purpose of affording a fresh start to an honest but unfortunate debtor. *Powers*, 554 B.R. at 55-56 (applying totality of circumstances tests for review under section 1325(a)(3) and analysis of motivation and purpose for review under section 1325(a)(7)); *see In re Roby*, 649 B.R. 583, 594 (Bankr. M.D. Ala. 2023) (debtors with a greedy and unworthy purpose or perpetrating a malevolent scheme are not proceeding in good faith). "[W]hile 'good faith' is not statutorily defined, courts have held that '[a] debtor acts in 'good faith' when [he or] she demonstrates a 'sound and proper motive for seeking the protection of Chapter 13.'"" *Powers*, 554 B.R. at 55-56 (quoting *Henri v. Wheeler (In re Wheeler)*, 511 B.R. 240, 250 (Bankr. N.D.N.Y. 2014 (citing *In re Johnson*, 428 B.R. 22, 24 (Bankr. W.D.N.Y. 2010)).

Denying a debtor the relief available under the Bankruptcy Code based on a lack of good faith is a narrow doctrine. *In re Ames*, Case No. 21-12125, 2022 Bankr. LEXIS 1715, at *21 (Bankr. E.D. Pa. June. 17, 2022). As Judge Eric L. Frank explained: "Whether at the initial filing stage or at confirmation, a finding of a lack of good faith serves as a general bar to the relief the Bankruptcy Code offers. In these contexts, courts generally have agreed that the good faith doctrine is a narrow one." *Id.* at 22 (quotations omitted). As a result, "[s]everal courts have recognized that a robust application of the good faith doctrine creates a risk that the court's analysis will lapse into an inquiry, that may clothe subjective moral judgments with the force of law. Further, a broad

6

application of the good faith requirement also would create an undue risk of judicial usurpation of the legislative power to determine the scope of and eligibility for [bankruptcy] relief. Consequently, denial of bankruptcy relief based on a lack of good faith should be confined carefully and is generally utilized only in egregious cases." *Id.* (quotations and citations omitted). With these principles in mind, the Court considers the good faith Objections to Confirmation in this case.

A.  Section 1325(a)(3) – Good Faith in Proposing the Amended Plan

The Second Circuit provides guidance for the Court's review of Debtor's intentions in proposing the Amended Plan under 11 U.S.C. §1325(a)(3): "To ascertain whether a plan was proposed in good faith, a bankruptcy court must determine 'whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner.'" *Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865, 868 (2d Cir. 1983) (quoting *In re Goeb,* 675 F.2d 1386, 1389-91 (9th Cir. 1982)); *see also In re Tcherneva*, 638 B.R. 676, 687 (Bankr. E.D.N.Y. 2022). Bankruptcy courts in this District have adopted additional factors to consider in this analysis, including:

> (1) the amount of the proposed payments and the amount of the debtor's surplus;
> (2) the debtor's employment history, ability to earn, and likelihood of future increases in income;
> (3) the duration of the plan;
> (4) the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;
> (5) the extent of preferential treatment of creditors;
> (6) the extent to which secured claims are modified;
> (7) the type of debt sought to be discharged, and whether any such debt is potentially non-dischargeable in Chapter 7;
> (8) the existence of special circumstances such as inordinate medical expenses;
> (9) the frequency with which the debtor has sought relief under the Code;
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
> (11) the burden which the plan's administration would place upon the Chapter 13 trustee.

7

*Powers*, 554 B.R. at 55-56 (quoting *In re Corino*, 191 B.R. 283, 288 (Bankr. N.D.N.Y. 1995)). No particular factor is determinative. *In re Wrobel*, 533 B.R. 863, 868 (Bankr. W.D.N.Y. 2015). "[T]he essence of the totality of circumstances test requires a determination of whether Debtor's conduct evinces a continuum of bad faith as it relates to the Chapter 13 Plan's proposal." *Powers*, 554 B.R. at 56. (quotations omitted).

Creditor alleges the circumstances in this case and several of the *Powers* factors support a finding that Debtor has not proposed the Amended Plan in good faith. She asserts Debtor has not committed his surplus income to fund it, noting the 36-month duration and 1% dividend are bare minimum requirements. In addressing special circumstances, Creditor submits Debtor's pre-petition conduct in failing to account for almost a half a million dollars spent in 15 months and failing to provide outside corroboration of those expenditures demonstrates an absence of good faith. Additionally, Creditor claims Debtor lacks honest motivation and sincerity as he only submitted the Amended Plan to avoid being held accountable for dissipating Creditor's portion of his retirement funds in the Contempt Proceeding. Thus, Creditor argues the totality of the circumstances demonstrate Debtor did not propose the Amended Plan in good faith as required by section 1325(a)(3) and confirmation should be denied.

Debtor counters that as an under-median debtor, he is entitled to file a 3-year plan with a 1% dividend to general unsecured creditors. As conceded by Creditor, he is not required to commit his Social Security to the Amended Plan. Debtor explained there is no likelihood of future increases in income, and at 68 years old, there is a "strong likelihood" of reduced income when he retires. He notes there have been no objections to the accuracy of Debtor's Petition, Plan, or schedules; no claims that he has attempted to mislead the Court; and no preferential treatment of creditors. There is no extra burden placed on the Trustee in administering the Amended Plan

because this is a straightforward Chapter 13 case with one primary creditor and minimal other debts. Debtor filed his case to address Creditor's dischargeable claim when faced with a contempt motion in the Matrimonial Case. Debtor submits these factors demonstrate the Amended Plan was proposed in good faith.

The Court recognizes several *Powers* factors weigh in favor of Creditor. First, Creditor's debt will be discharged upon completion of the Amended Plan payments, while it would not be discharged in a chapter 7 case.[6] Nevertheless, "Congress has made it clear that some debts, although nondischargeable in Chapter 7 may be discharged under the more liberal rules of Chapter 13," and "[w]e are not free to second-guess Congress's policy choice in this regard." *In re Smith*, 286 F.3d 461, 467 (7th Cir. 2002). "[A]lthough the nature of the underlying debt, not dischargeable in Chapter 7 weighs against a finding of good faith, this factor alone cannot defeat confirmation of [the debtor's] plan." *Id*. at 468.

Second, Debtor's filing of the Petition while a request for a contempt order was pending supports Creditor's position. However, this timing does not conclusively establish a lack of good faith in proposing the Amended Plan. "It is, after all, permissible to use the Bankruptcy Code to try for a fresh start when subject to a real and substantial threat of economic harm." *In re Pappas*, Case No. 18-20179, 2019 Bankr. LEXIS 2917, at * 23 (Bankr. D. Me. Sept. 19, 2019) (finding the proximity between the commencement of a case and a contempt order "is not determinative" of good faith) (quotation omitted). To find that filing a bankruptcy on the eve of a court proceeding

---

[6] Pursuant to section 1328(a)(2), domestic support obligations described in section 523(a)(5) are excepted from the Chapter 13 "super-discharge." In contrast, debts incurred "in the course of a divorce or separation or in connection with a separation agreement or divorce decree or other order of a court of record" are discharged. *See* 11 U.S.C. §§ 523(a)(15) and 1328(a). Here, the Divorce Judgment specifically provides: "pursuant to the terms of the in-Court Stipulation dated November 24, 2004, and as more specifically set forth therein, each party waives any past, present or future spousal maintenance from the other party." Accordingly, the debt at issue is not a domestic support obligation and would be dischargeable upon completion of a chapter 13 plan.

9

in anticipation of an adverse outcome equates to a lack of good faith would have consequences that reach far beyond this case and will not be adopted by this Court.

The final factor that weighs heavily in favor of Creditor and makes this a difficult decision involves the "special circumstances" that exist based on Debtor's pre-petition conduct in dissipating a significant amount of money, including Creditor's portion of his retirement funds, over a relatively short period of time without suitable documentation. It is undisputed that Debtor failed to provide certain records and there were gaps regarding large disbursements. In some cases, a court may presume bad faith based on those actions alone. However, the Court assessed the testimony of Debtor and found him to be credible. While highly educated, he was admittedly a terrible record-keeper and not good with his finances. (Trial Tr. p. 134). He also provided hundreds of pages of financial records including bank statements and credit card statements to Creditor and testified extensively at the 2004 Examination and the Hearing. (Debtor's Exs. 1-4). Debtor's testimony and the corroborating documents generally supported his overall explanation of how the retirement money was spent.

More specifically, Debtor testified regarding extensive efforts to educate himself about "investments" to launch and purchase various on-line business ventures and start-up websites. The M & T Bank statements confirmed large payments for those endeavors. For example, he paid $30,000.00 to Mr. DeMartino to purchase a cryptocurrency website that was not fully developed and which business "fell through." (Trial Tr. pp. 39-40, 133-34). Debtor also paid over $17,000 to I.E. Plexis to build a website and to gain information and clients for advertising, (Trial Tr. pp. 43-44, 101-04), and then changed firms to Vibrant Web to which he paid nearly $10,500 for the same type of information, neither of which resulted in the generation of any business prospects.

(Trial Tr. pp. 97-98, 130). Even though they failed to produce any positive return, Debtor was a glutton for punishment and continued to pursue those "opportunities."

Debtor also made large withdrawals for home renovations to his residence on Rigi Ave. His payments to contractors were made in cash because he would get a better deal. (Trial Tr. p. 95). His 2004 Examination testimony estimated home repairs cost $30,000 - $45,000, but after reviewing his bank statements in detail, that figure increased dramatically to over $100,000. While the numbers significantly changed, Debtor testified credibly that the renovations were made because the house was very old, in a bad state of disrepair and he was trying to rent it through Airbnb. (Trial Tr. pp. 135-140). Several bank statements admitted into evidence confirmed various expenditures at Lowe's and Home Depot, which supported Debtor's testimony. Even with those renovations, the house, owned jointly with Debtor's brother, only had an estimated value of $87,248. (*See* Petition at Doc. 1). While perhaps another poor return on his investment, the renovation expenses still provided a plausible explanation for how a large portion of the retirement funds were spent.

Debtor further testified that he gifted and loaned money to his contractor, Eric Roller and to Cornelius Miller without documentation. He originally did not include the loan to Mr. Miller on his schedules as he believed it was uncollectible, but later amended them to include that asset. While those decisions may seem foolish to the Court, they do not lead to the conclusion that Debtor lacked good faith in proposing the Amended Plan.

Although written details of every transaction above were not submitted into evidence, the Court may determine that oral testimony alone is sufficient. *See Sanders v. Monsanto Co.*, 574 F.2d 198, 200 (5th Cir. 1978) (stating in *dicta* "[h]istorical experience has taught us that testimonial evidence has the highest reliability because the credibility of the witness can be evaluated, and the

11

factual issues narrowed by cross-examination"). Here, Debtor provided direct evidence of personal knowledge of the expenditures and the Court finds he was credible. *Sylvester v. SOS Children's Vills. III, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006) ("Direct testimony by a witness about a matter within his personal knowledge does not require drawing an inference from the evidence . . . to the proposition that it is offered to establish"). The bank and credit card statements admitted into evidence further support his credibility. (*See* Debtor's Exs. 1-4).

Applying the Second Circuit precedent and the *Powers* factors to the case at hand, the Court finds that the Amended Plan was filed in good faith. The following facts were pertinent in reaching that conclusion: The Amended Plan proposes payments of $554.33 for 36-months with a 1% dividend to unsecured creditors which is based on his status as a below-median debtor and his available disposable income from Schedules I and J. Assuming the rental income ended in May 2022 as reflected in Schedule I and was not replaced,[7] the plan payment is wholly being paid from Debtor's Social Security benefits each month, even though they are excluded from the disposable income analysis under the Code. *In re Manzo*, 577 B.R. 759, 767 (N.D. Ill. 2017) ("Congress explicitly excluded social security income from the calculation of disposable income, and when Congress speaks directly to one of the good faith factors, the judicial good faith inquiry is narrowed accordingly.") (quotation omitted). Except for those benefits, there are no surplus funds remaining with Debtor.

At 68 years old, Debtor is still working as a respiratory therapist in order to meet expenses. In light of his age it is unlikely there will be any increase in his income in the future. Debtor has not identified any preferential payment of creditors, nor does he seek modification of any secured claims. This is the only case filed by Debtor and the Court does not perceive any additional burden

---

[7] If Debtor's rental income was replaced at $500 per month, Debtor would still need to dedicate $144 per month of Social Security to make the Amended Plan payment.

will be placed on the Chapter 13 Trustee. The Court believes Debtor's motivation and sincerity in seeking Chapter 13 relief is consistent with the purpose and goals of the Bankruptcy Code.

In reviewing the totality of the circumstances, additional facts came into play. First and most importantly, Debtor not only spent Creditor's share of his retirement funds, he spent his entire retirement account balance as well. Debtor had $500 in his bank accounts and no retirement funds on the Petition Date. There were no allegations made that he still possessed the money, concealed money or assets or dissipated the funds out of malice toward Creditor. The record is devoid of evidence that Debtor splurged on luxury items, or that he was living a different lifestyle than the one reflected in the Petition. Debtor systematically accessed the retirement funds over a period of time on a variety of different projects and loans. Even though the spending was significant, it was not wanton or spiteful. Instead, he spent, loaned, gifted or foolishly invested all of the money in transactions that occurred approximately 3 years before the Petition Date.

In light of the above, the Court finds Debtor to be sincere in proposing the Amended Plan. He did not misrepresent facts, unfairly manipulate the Bankruptcy Code or otherwise propose that plan in an inequitable manner. Debtor has also been making his proposed plan payments to the Trustee. These factors demonstrate Debtor's good faith in proposing the Amended Plan as required under section 1325(a)(3). *In re Johnson*, 428 B.R. 22, 24 (Bankr. W.D.N.Y. 2010)

B. Section 1325(a)(7) – Good Faith Filing of the Petition

In addition to the requirement that the Amended Plan be proposed in good faith, Debtor's Petition must be filed in good faith. This assessment is also made on a case-by-case basis based on the totality of the circumstances. *In re Roby*, 649 B.R. 583, 595 (Bankr. M.D. Ala. 2023) (citing *Gen. Lending Corp. v. Cancio*, 578 F. App'x 832, 834-35 (11th Cir. 2014); *In re Brown*, 742 F.3d 1309, 1317 (11th Cir. 2014)); *In re Powers*, 554 B.R. 41, 58 (Bankr. N.D.N.Y. 2016). The

13

"essential question" is "whether the petition was filed for a greedy and unworthy purpose as opposed to a rehabilitative purpose." *Powers*, 554 B.R. at 59 (quotations omitted). This inquiry examines factors such as: "the motivation of the debtor and his or her sincerity in seeking Chapter 13 relief, the debtor's degree of effort, the frequency with which the debtor has sought relief under the Code, and the circumstances under which the debtor has contracted his or her debts and has demonstrated good faith in dealing with creditors." *Id.*

Several of the section 1325(a)(3) factors and cases discussed above overlap and influence this analysis. Like *Powers*, this case is essentially a two-party dispute precipitated by the contempt motion brought in the Matrimonial Case by Creditor. *Id.* ("The Court is cognizant of the fact that this bankruptcy case is defined by Debtor's ongoing matrimonial and familial dispute"). As in many chapter 13 cases involving a divorced debtor, the primary debt was unpaid court-ordered equitable distribution. Considering Congress's express intention to permit this type of debt to be discharged in chapter 13 cases, the Court finds the filing of the Petition was not for a greedy or unworthy purpose. *See* 11 U.S.C. §§ 1328(a) and 523(a)(15). This is Debtor's first bankruptcy case, and he is contributing a portion of his Social Security income to make the payments. The Amended Plan is proposed for a rehabilitative purpose and Debtor's efforts have demonstrated an ability to complete it. Thus, the remaining issue is the circumstances under which Debtor has contracted his debts and if he has demonstrated good faith in dealing with creditors, in particular the objecting Creditor herein.

There are facts here that both support and refute a finding that Debtor dealt with Creditor in good faith. The Divorce Judgment requiring the preparation of the QDROs was entered in 2005 – more than 16 years before the Petition Date. It was Creditor's counsel's obligation to prepare those orders. In addition, the liquidation and spending of the retirement funds occurred from 2016

14

through 2018, ending approximately 3 years before the case was filed.  Creditor did not begin her "inquiry" into the VALIC Account until August 2019 after the money was already spent, although she presumably knew Debtor would be eligible to draw on his retirement in February 2017.  Those facts weigh against Creditor's position and support a good faith finding.

On the other hand, Debtor knew Creditor was entitled to receive a portion of the retirement benefits prior to the accounts being liquidated and the funds spent.  (Trial Tr.-2 p. 10).  He was also aware of the terms of the Divorce Judgment and underlying agreement that Creditor was entitled to a share of that money but dissipated it anyway.  (Trial Tr.-2 p. 14).  In spite of this knowledge, Debtor's actions in accessing and spending the funds did not appear to be out of ill will or malice.  Besides the understandable tension brought about by the retirement account liquidation and Contempt Proceeding, the Parties appear to have maintained a cordial relationship. (Tr. Trans.-2, pp. 16-17).

In contrast to the facts here, Judge Cangilos-Ruiz previously found a lack of good faith when a debtor intentionally spent significant sums of money that did not belong to her and then repeatedly lied to the state court and the bankruptcy court.  *Henri v. Wheeler (In re Wheeler),* 511 B.R. 240, 251 (Bankr. N.D.N.Y. 2014).  Before seeking bankruptcy protection, the *Wheeler* debtor was directed by the state court to hold certain life insurance proceeds in escrow.  She repeatedly made false representations that the funds were safe, while spending significant sums and transferring $50,000 to her daughter, resulting in the state court finding the debtor in contempt, and entering a judgment against her.  In evaluating debtor's good faith in filing the bankruptcy case, this Court found debtor's "deceptive behavior continued throughout her bankruptcy case," as she failed to disclose a prior chapter 7 bankruptcy filing within the past eight years, failed to disclose a potential fraudulent transfer of a vehicle, and falsely testified at the 341 meeting.  *Id.* at

15

247. These actions were found to be "fatal not only to confirmation of the current plan but to any other plan that could be proposed." *Id.* at 251.

While this Debtor also intentionally spent the retirement funds and was subject to a contempt proceeding, that is the end of the similarities with the *Wheeler* case. Debtor has been transparent in his disclosures to the Court and the Creditor, testified credibly and has not been accused of lying, fraud, or any other conduct that would support a finding of lack of good faith. Debtor stated that in light of the pending Contempt Proceeding, he filed the case to protect himself financially. (Trial Tr. pp. 19-22). Recognizing that denial of bankruptcy relief based on a lack of good faith should be confined carefully and utilized only in egregious cases, the Court believes his conduct in dissipating the funds does not rise to the level of egregiousness that warrants denial of bankruptcy relief.

In this case, the Court finds Debtor is dealing fairly and in good faith with all his debts by making payments under the Amended Plan and providing his creditors with some recovery. Debtor has presented a sound and proper purpose for seeking bankruptcy protection. The bankruptcy filing and proceedings since that time have shown Debtor's "honesty in belief or purpose…" and "absence of intent to defraud or to seek unconscionable advantage." The Court therefore concludes Debtor has demonstrated by a preponderance of the evidence that he filed the Petition in good faith as required by section 1325(a)(7).

## Conclusion

In light of the foregoing, the Court hereby finds Debtor has proposed the Amended Plan in good faith pursuant to section 1325(a)(3) and filed the Petition in good faith as required by section 1325(a)(7). The Court directs the Chapter 13 Trustee to submit a proposed Order Confirming Chapter 13 Plan within 30 days.

###